IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BENJAMIN TURNER,      *

    Plaintiff,      *

vs.      *      Civil Action No. ADC-16-3432

CAROLYN W. COLVIN,      *
Acting Commissioner,
Social Security Administration,      *

    Defendant.      *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On October 13, 2016, Benjamin Turner ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and each parties cross-motions for summary judgment (ECF Nos. 14 and 15), the Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) is GRANTED, and the decision of the Social Security Administration is AFFIRMED.

### PROCEDURAL HISTORY

On October 15, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning on August 31, 2012. His claims were denied initially and upon reconsideration on April 23, 2013 and August 21, 2013, respectively. Subsequently, on August 31, 2013, Plaintiff filed a written request for a hearing and, on March 18, 2015, a hearing was held before an Administrative Law Judge ("ALJ"). On May 8, 2015, the ALJ rendered a decision

ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from August 31, 2012, through the date of this decision." *See* ECF No. 11-3 at 34. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on April 1, 2016, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Subsequent to that decision, Plaintiff filed a second application for a period of disability and disability insurance benefits alleging disability beginning on May 9, 2015. That claim was granted on February 3, 2017.

On October 13, 2016, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's denial of Plaintiff's first disability application.[1] On February 21, 2017, Plaintiff filed a Motion for Summary Judgment. On April 24, 2017, Defendant filed a Motion for Summary Judgment. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement and Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). However, the Court does not conduct a de novo review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The

---

[1] On May 31, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *see also Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence."). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.").

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d at 653 (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB, a claimant must establish that she is under disability within the meaning of the Social Security Act. The term "disability," for purposes of the Social Security Act, is defined as the "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such a severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Social Security Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that, "[i]f at any step a finding of disability or non-disability can be made, the [Commissioner] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of 12 months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c), 416.909.

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling (SSR) 96–8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir.1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual

5

alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96–7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.*

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. At steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012); *See also Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not

disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 31, 2012. ECF No. 11-3 at 25. At step two, the ALJ found that Plaintiff had the severe impairments of mood disorder; major depressive disorder; anxiety disorder; obsessive-compulsive disorder; pervasive development disorder; schizotypal personality disorder; and autism spectrum disorder. *Id.* The ALJ also found that Plaintiff had the non-severe impairments of osteochondritis dissecans; GERD; pes planus; onychomycosis; and subungal hyperkeratosis. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *Id.* at 26. At step four, the ALJ determined that Plaintiff had the residual functional capacity to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: simple, routine, repetitive tasks; low stress work environment, defined as no strict production quotas; and, occasional interaction with the public, co-workers, and supervisors.

*Id.* at 28. Based on the resulting RFC, the ALJ then determined that Plaintiff was "unable to perform any past relevant work" *Id.* at 33.

Finally, at step five, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* Thus, the ALJ concluded that, "[T]he claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2012, through the date of this decision [.]" *Id* at 34.

## DISCUSSION

Plaintiff raises four allegations of error on appeal: (1) that the subsequent award of disability benefits by the SSA constitutes new and material evidence; (2) that the ALJ improperly ignored the opinion of the state agency medical consultant; (3) that the ALJ's RFC determination failed to account for Plaintiff's moderate difficulties with concentration, persistence, and pace; and (4) that the ALJ's RFC determination was not supported by substantial evidence. Each of Plaintiff's arguments lack merit and are addressed below.

### A. Plaintiff's subsequent disability determination does not constitute new and material evidence.

On May 8, 2015, the ALJ rendered the decision that is now under review, ruling that Plaintiff was not disabled under the Social Security Act. *See* ECF No. 11-3. Following that initial May 8, 2015 decision denying him disability benefits, Plaintiff filed a second application for disability which alleged a disability onset date of May 9, 2015. Thereafter, on February 3, 2017, Plaintiff was awarded benefits on that second application for disability. The Notice of Award for Plaintiff's second claim indicated, in pertinent part, that "[Plaintiff] became disabled under our rules on May 9, 2015." ECF No. 14-1 at 2. Thus, according to the second disability determination, Plaintiff became disabled one day after the ALJ in the first decision concluded that he was not eligible for disability benefits.

Plaintiff contends that the close proximity of the second disability finding constitutes new and material evidence pertinent to ALJ's initial May 8th decision denying him benefits. Thus, in Plaintiff's view, remand of the ALJ's May 8th decision is appropriate. The Court, however, finds that remand based on new and material evidence is not warranted in this case.

Pursuant to sentence six of 42 U.S.C. § 405(g), courts "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that

there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding [.]" If such a showing is made, the court does not affirm or reverse the Commissioner's decision but rather remands the case to the Commissioner for consideration of the new evidence. *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

The Fourth Circuit has held that evidence is considered material where "there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Secretary, Dep't of Health & Human Services*, 953 F.2d 93, 96 (4th Cir.1991). Although the Fourth Circuit has not expressly addressed the issue of whether a subsequent finding of disability itself constitutes new and material evidence, district courts within the Circuit, as well as other federal courts, have taken varying approaches to deciding such cases. Several courts have ordered remand due to the close proximity of the claimant's disability onset date and the date when the claimant was initially denied benefits. *See, e.g., Hayes v. Astrue*, 488 F.Supp.2d 560, 565 (W.D.Va.2007) (remanding where the subsequent award used an onset date one day after an unfavorable decision); *Reichard v. Barnhart*, 285 F.Supp.2d 728, 734 (S.D.W.Va.2003) (remanding where the subsequent award used an onset date less than one week after an unfavorable decision); *Osborne v. Astrue*, No. TMD 11–1124M, 2013 WL 436512, at *3 (D.Md. Feb. 4, 2013) (remanding where a subsequent award became effective one day after the ALJ concluded that the claimant was not disabled). Other courts have found the opposite, that subsequent awards alone cannot constitute new and material evidence even where there is a close proximity between the date of first denial and the subsequent onset date. *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 654 (6th Cir.2009) (finding remand unwarranted because the claimant failed to show that "the subsequent decision was supported by new and material

evidence that [the claimant] had good cause for not raising in the prior proceeding"); *Atkinson v. Astrue*, No. 5:10–CV–298–FL, 2011 WL 3664346 (E.D.N.C. July 20, 2011) (collecting cases and determining that exclusive reliance on a subsequent award does not establish the existence of new and material evidence); *Johnson v. Astrue*, No. 3:09–2458–JMC–JRM, 2010 WL 6089082, at *8 (D.S.C. Nov. 16, 2010) (relying on Allen and holding that a subsequent favorable decision alone does not merit remand); *Sayre v. Astrue*, No. 3:09–01061, 2010 WL 4919492, at *4 (S.D.W.Va. Nov. 29, 2010) (adopting the Allen rationale); *Dickens v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-12-3708, 2013 WL 5340921, at *4 (D. Md. Sept. 20, 2013) (adopting *Allen* and *Atkinson* rationale).

Acknowledging the close proximity of the date of first denial and the subsequent onset date in this case, the Court nevertheless rejects Plaintiff's argument and adopts the rationale originally set forth in *Allen*:

> Under sentence six, the mere existence of the subsequent decision in Allen's favor, standing alone, cannot be evidence that can change the outcome of his prior proceeding. A subsequent favorable decision may be supported by evidence that is new and material under § 405(g), but the decision is not itself new and material evidence.
>
> If a subsequent favorable decision-separated from any new substantive evidence supporting the decision-could itself be "new evidence" under sentence six, the only way that it might change the outcome of the initial proceeding is by the power of its alternative analysis of the same evidence. But remand under sentence six is not meant to address the "correctness of the administrative determination" made on the evidence already before the initial ALJ.

*Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir.2009) (footnote omitted) (citing *Melkonyan*, 501 U.S. at 100).

Therefore, based on *Allen*, the simple fact that Plaintiff was awarded disability benefits at a later date does not constitute new and material evidence meriting remand. The Court additionally notes that, because the Notice of Awards provided no evidentiary basis or

10

explanation for the subsequent determination of disability, there is no additional substantive evidence for the ALJ to review on remand. Thus, the second determination provides no facts or evidence that would have the effect of changing the outcome of the initial decision. Consequently, Plaintiff's first allegation of error is denied.

### B. The ALJ properly evaluated the opinions of Plaintiff's treating consultative examiner and social worker.

Plaintiff next challenges the ALJ's assessment of Dr. George Grubbs, Psy.D., the state agency psychological consultant. Plaintiff contends that remand is required because the ALJ failed to specifically address Dr. Grubbs' opinion that Plaintiff met listing(s) 12.06(A)-(B). Plaintiff bases his argument on a single notation in Dr. Grubbs' Disability Determination Explanation on August 14, 2013 (ECF No. 11-4 at 68-79), which indicates that Plaintiff "-Meets 12.06AB". ECF No. 11-4 at 74. Defendant counters that, despite that notation, Dr. Grubbs did not actually conclude that Plaintiff met a listing.

Listing 12.06 is met if an individual meets the A and B criteria or the A and C criteria. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The B criteria are met by having at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Listing 12.06B. For the first three functional areas, the ratings, in order of increasing level of limitation, are none, mild, moderate, marked, and extreme. See 20 C.F.R. § 404.1520a(c)(4); Listing 12.00C1–3. The last area—repeated episodes of decompensation, each of extended duration—means three episodes within one year or an average of one every four months, each lasting at least two weeks. See Listing 12.00C4. With regard to the C criteria, Listing 12.06 requires that a disorder specified in the A criteria result in the complete inability to function outside the area of the home. Listing 12.06C.

Upon review of the treatment records, the Court finds in favor of the Defendant because Dr. Grubbs' subsequent findings unequivocally indicate that Plaintiff did not meet the criteria for any of the listed impairments. According to the medical records, Dr. Grubbs diagnosed Plaintiff with the following medically determinable impairments: affective disorders; anxiety disorders; autistic disorders and other pervasive developmental disorders; and personality disorders. Dr. Grubbs further opined that those impairments were non-severe. Dr. Grubbs then compared Plaintiff's non-severe impairments with the Paragraph A criteria for listings 12.04 (Affective Disorders), 12.06 (Anxiety-Related Disorders), 12.08 (Personality Disorders), and 12.10 (Autistic Disorders and Other Pervasive Developmental Disorders), noting that in each instance "a medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above." ECF No. 11-4 at 75. Dr. Grubbs then analyzed Plaintiff's non-severe impairments under the Paragraph B criteria and concluded that Plaintiff had no restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration.[2] Finally, Dr. Grubbs evaluated Plaintiff's non-severe impairments under the

---

[2] The ALJ, in assigning modest weight to the opinion of Dr. Grubbs, noted Dr. Grubbs' Paragraph B findings stating:

> In August 2013, the State agency psychological consultant, George Grubbs, Psy.D., opined that the claimant has no restriction of activities of daily living, mild difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence, or pace and no episodes of decompensation of extended duration. This opinion is given modest weight, as the evidence of record discussed below supports moderate limitations.

ECF No. 11-3 at 26 (internal footnotes omitted).

Paragraph C criteria and concluded that "[the] [e]vidence does not establish the presence of the "C' criteria" for any of the previously mentioned listings.[3]

Thus, despite the notation that forms the basis of Plaintiff's argument, the Court finds that Dr. Grubbs' treatment records clearly and unequivocally indicate that Plaintiff failed to meet the criteria for both Listings 12.06(A) and 12.06(B) and the ALJ committed no error in his analysis of Dr. Grubbs' findings. Accordingly, Plaintiff's second allegation of error fails.

### C. The ALJ's RFC determination properly accounted for Plaintiff's moderate difficulties with concentration, persistence, and pace.

At step three of the sequential evaluation, the ALJ determined that "with regard to concentration, persistence or pace, [Plaintiff] had moderate difficulties." ECF No. 11-3 at 27. The ALJ then determined that Plaintiff had the residual functional capacity to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: simple, routine, repetitive tasks; low stress work environment, defined as no strict production quotas; and, occasional interaction with the public, co-workers, and supervisors.

*Id.* at 28. Plaintiff contends that the ALJ's RFC assessment failed to adequately account for Plaintiff's moderate limitation in concentration, persistence, or pace in violation of *Mascio v. Colvin*. ECF No. 14-1 at 12. Defendant counters that the present case is distinguishable from *Mascio*. The Court agrees with Defendant.

In *Mascio* the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task. The latter ability concerns the broad functional area of concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. Like *Mascio*, the ALJ's RFC determination included a non-exertional restriction to simple, routine, repetitive tasks. ECF No. 11-3 at 28. However, unlike *Mascio*, the ALJ's RFC assessment in this case also included

---

[3] The Court additionally notes that Dr. Grubbs found Plaintiff was "Not Disabled" based on his medical assessment of Plaintiff.

13

additional limitations, one of which restricted Plaintiff to "[a] low stress work environment, defined as no strict production quotas[.]" *Id.*

While a limitation to simple, routine, repetitive tasks alone is insufficient under *Mascio*, Courts in this district have uniformly found that further RFC restrictions limiting claimants to work with no production quotas adequately account for a claimant's moderate limitations in concentration, persistence, and pace. *See, e.g., Mason v. Comm'r of Soc. Sec. Admin.*, No. SAG-14-3362, 2016 WL 225689, at *3 (D. Md. Jan. 19, 2016) (finding no error under *Mascio* where ALJ's RFC assessment included a restriction specifically limiting claimant to "work that does not require the satisfaction of a production pace"); *Chase v. Comm'r of Soc. Sec. Admin.*, No. SAG-14-2961, 2016 WL 199410 at *3 (D. Md. Jan. 15, 2016) (finding no error where ALJ restricted claimant's RFC to "simple, routine, and repetitive tasks, in a 'low stress' job (defined as requiring no more than occasional decision making and no more than occasional changes in the work setting), with *no production rate or paced work* (such as would be done on an assembly line) [.]" (emphasis added); *Shirey v. Comm'r of Soc. Sec. Admin.*, No. SAG-15-261, 2015 WL 7012718, at *2-3 (D. Md. Nov. 10, 2015) (finding no error with RFC limiting claimant to "routine and repetitive tasks in a *work environment free of fast paced production* requirements which is defined as constant activity with work tasks performed sequentially in rapid succession.") (emphasis added); *Rayman v. Comm'r of Soc. Sec. Admin.*, No. SAG-14-3102, 2015 WL 6870053 at *3 (D. Md. Nov. 6, 2015) (finding no error where RFC limited claimant to "a low stress environment, such that there are few changes in the work setting and no fast-paced or quota production standards[.]").

Here, the ALJ limited Plaintiff's RFC to "simple, routine, repetitive tasks; *low stress work environment, defined as no strict production quotas*; and, occasional interaction with the

14

public, co-workers and supervisors." ECF No. 11-3 at 28 (emphasis added). Thus, the ALJ's RFC assessment adequately accounted for Plaintiff's moderate limitation in concentration, persistence, and pace. Accordingly, remand based on *Mascio* is unwarranted in this case.

**D. The ALJ's RFC was supported by substantial evidence.**

Plaintiff argues that the ALJ's RFC assessment was not supported by the opinions of Plaintiff's treating psychiatrist, Plaintiff's examining psychologist, and Plaintiff's examining occupational therapist.

Under the treating physician rule, an ALJ must generally give more weight to a treating physician's opinion where that opinion: 1) is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). Thus, the ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques. SSR 96–2p. If the opinion is well-supported, the ALJ then considers whether the opinion is consistent with other substantial evidence in the record. SSR 96–2p. However, if the treating physician's opinion is either; (1) not supported by medically acceptable clinical and laboratory evidence; or (2) is inconsistent with other substantial evidence, it should be afforded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (superseded by statute on other grounds). In such a circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

In cases where a treating source's opinion is not given controlling weight, the ALJ must analyze the following factors in deciding the appropriate weight to give the treating physician's opinion: (1) length and frequency of treatment relationship; (2) nature and extent of treatment;

15

(3) supportability, consistency, specialization, and (4) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1-6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, 2011 WL 3273060, at 6 (D. Md. July 27, 2011). In addition, the ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2).

The ALJ must also consider, and may rely on, the opinions of non-treating sources. *See* SSR 96-6p, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). As is the case with the opinions of physicians and psychologists, the ALJ is required to weigh the opinions of non-treating sources and explain the reasons behind the weight given. *See* SSR 06-03p, 2006 WL 2329939, at *6.

The court quotes the ALJ's discussion regarding Plaintiff's treating psychiatrist, Plaintiff's examining psychologist, and Plaintiff's examining occupational therapist:

> As for the additional opinion evidence, on October 17, 2013, the claimant's treating psychiatrist, Ryan Stagg, M.D., completed a Mental Assessment of Ability to do Work Related Activities. Dr. Stagg opined that the claimant has a good ability to follow work rules, understand, remember and carry out both complex and simple job instructions, and maintain personal appearance. Dr. Stagg rated the claimant as having a fair ability in the remainder of personal-social adjustments, performance adjustments and occupational adjustments. This opinion is given significant weight, as it is consistent with the GAF scores assessed in treatment by Dr. Stagg, as well as Mr. Berry, which ranged from 55 to 70. The assessed GAF scores are also given significant weight, as they are

16

consistent with the claimant's contemporaneous functioning. *On balance though, the evidence of record supports moderate limitations.* Since the alleged onset of disability, he claimant has only been assessed with a lower GAF score on two occasions. In October 2012, at the very onset of treatment, Mr. Berry assessed a GAF of 45 and only two weeks into treatment as 50. These GAF scores are only given moderate weight as they were a snapshot of a very brief period at the beginning of treatment.

On July 25, 2014, Caitlin Synovec, OTR/L, completed a Mental Assessment of Ability to do Work Related Activities. Ms. Synovec opined that the claimant has marked or extreme limitations in nearly all occupational adjustments, performance adjustments, and personal-social adjustments. Ms. Synovec states that the claimant presents with decreased attention and problem solving skills, impacting his ability to recall information and successfully execute tasks. This opinion is given modest weight, as Ms. Synovec does not refer to any clinical signs uncovered by her at particular examinations of the claimant, or the results of testing administered by her. Further Ms. Synovec is not a medically acceptable source and relies almost exclusively on the claimant's subjective, self-reported history and allegations concerning symptoms.

Dr. Anderson opined that the claimant has no capacity for competitive employment. Dr. Anderson completed a Medical Assessment of Ability to do Work Related Activities following the examination. Dr. Anderson opined that the claimant has poor to no ability to make any occupational adjustment and poor to no ability to understand, remember and carry out complex or detailed job instructions. Dr. Anderson further opined that the claimant has a fair ability to understand, remember and carry out simple job instructions, as well as fair ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability. This opinion is given modest weight, as it is not consistent with the results of the IQ and achievement testing, nor is it consistent with the claimant's self-reported activities of daily living. Dr. Anderson only conducted a cursory mental status examination. Further, it is not consistent with the GAF scores of 60 to 70 assigned repeatedly in treatment. Dr. Anderson unduly relies on the claimant's subjective reported history, rather than on the results of his objective testing. Had the claimant been as disabled, as opined by Dr. Anderson, he would not have been able to complete the tests administered, much less perform well on them.

ECF No. 11-3 at 31-32 (footnotes omitted).

Plaintiff claims the ALJ's RFC determination is not based on substantial evidence in the record. Plaintiff contends that the ALJ failed to properly account for the "significant [functional] limitations" proposed by each of the above-named medical sources. For the following reasons

the Court finds that the ALJ committed no error in evaluating the opinions of each medical source.

Beginning with Plaintiff's treating psychiatrist, Dr. Ryan Stagg, M.D., the ALJ gave Dr. Stagg's opinion significant weight and found that both the treatment records as well as the various GAF scores taken by Dr. Stagg and others were consistent with a moderate level of limitation. That level of limitation was subsequently reflected in the ALJ's RFC determination. Plaintiff does not controvert the ALJ's weighing of Dr. Stagg's opinion but instead insists that Dr. Stagg's records supported a higher degree of functional limitation than was found at step four. The Court disagrees.

Dr. Stagg evaluated Plaintiff on December 13, 2012, assessing, inter alia, that Plaintiff appeared alert, cooperative, engaged, and honest, although guarded at times. Dr. Stagg also remarked that Plaintiff was relaxed, appropriate, and exhibited no unusual behaviors during the interview. Similarly, Dr. Stagg observed that Plaintiff's mood was normal and appropriate given the situation but that Plaintiff's affect was restricted. With regard to Plaintiff's speech, Dr. Stagg reported normal volume, rate, rhythm, quantity, and fluency. Dr. Stagg further reported that Plaintiff's thought processes were organized, coherent, logical, concrete, and goal-oriented with no perceptual impairments but that Plaintiff did exhibit obsessive and compulsive thought content. Dr. Stagg additionally noted that Plaintiff had poor impulse control but that Plaintiff's insight and judgment appeared fair. In accord with those observations, Dr. Stagg diagnosed Plaintiff with mood disorder, obsessive compulsive disorder and pervasive developmental disorder, opined that Plaintiff had problems with social environment, economics, and housing, and assigned Plaintiff a GAF score of 60.  ECF No. 11-10 at 120-126. Thus, Dr. Stagg's

findings as a whole were consistent with the moderate degree of limitation reflected in the ALJ's RFC determination.

Plaintiff next argues that the ALJ improperly rejected the opinions of both psychologist Dr. Janet Anderson, Ph.D., and examining occupational therapist Ms. Caitlin Synovec, OTR/L., that Plaintiff had "serious limitations" in functioning. As quoted above, the ALJ found that Dr. Anderson's opinion that Plaintiff "had no capacity for competitive employment" was inconsistent with other record evidence including Plaintiff's IQ and achievement testing, Plaintiff's self-reported activities of daily living, Plaintiff's GAF scores, and Plaintiff's performances on clinical tests. In addition, the ALJ noted that Dr. Anderson relied primarily on the claimant's subjectively reported history, rather than on the results of his own objective testing. Similarly, the ALJ found that Ms. Synovec's opinion that Plaintiff had marked or extreme limitations in nearly all occupational adjustments was not supported by any clinical or lab findings on record and was supported only by Plaintiff's subjective allegations and self-reported history.

Therefore, the ALJ properly considered each sources' opinion, assigned them weight, and properly articulated the reasons, supported by evidence in the record as a whole, for assigning such weight to each opinion. Accordingly, Plaintiff's last allegation of error fails.

### CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF

No. 14) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 9 August 2017

_____
A. David Copperthite
United States Magistrate Judge